IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT TOMASZEWSKI, | CIVIL ACTION |
| Plaintiff, | |
| | |
| v. | |
| | |
| CITY OF PHILADELPHIA, | NO. 17-4675 |
| Defendant. | |

DuBois, J.                                                                                     December 13, 2018

**M E M O R A N D U M**

I. **INTRODUCTION**

Plaintiff, Robert Tomaszewski, works for the City of Philadelphia's Department of Prisons as a Deputy Commissioner. In his First Amended Complaint, plaintiff, a Caucasian male, alleges that he was passed over for promotion to the position of Commissioner of Prisons because race and sex were used as determinative or motivating factors in the hiring process. Plaintiff further alleges that, after complaining about the City's discriminatory conduct, he was subjected to a hostile work environment and retaliation. Plaintiff now seeks to depose Mayor James Kenney as a part of the discovery process. Presently before the Court is Defendant's Motion for a Protective Order to Preclude the Deposition of the Honorable Mayor James Kenney. For the reasons that follow, defendant's motion for a protective order is granted.

II. **BACKGROUND**

Plaintiff, Robert Tomaszewski, has worked in the City of Philadelphia's Department of Prisons for over thirty-three years. Pl.'s Mem. in Opp. 1. In 2015, after the Commissioner of Prisons announced that he would be retiring, the City of Philadelphia began the process of searching for a new Commissioner to fill the position. Pl. First Am. Compl. 5. This search

process was overseen by Mayor Kenney's transition team which appointed an independent Public Safety Committee to conduct initial candidate interviews for the Commissioner of Prisons position. Def.'s Mot. for Protective Order 3.[1]

Plaintiff applied for the Commissioner of Prisons position and, together with three other candidates, was interviewed by the Public Safety Committee. *Id.* The Public Safety Committee ultimately recommended that two of the four candidates continue on to the next round of the hiring process and determined that the other two candidates, one of whom was plaintiff, were not a good fit for the position. *Id.* The Committee stated that plaintiff had potential as a Deputy Commissioner but not as Commissioner. *Id.* This decision ended all consideration of plaintiff for the position of Commissioner of Prisons, and plaintiff was never presented to Mayor Kenney as a candidate. *Id.* Notably, one of the two candidates that the Public Safety Committee recommended, Michael Resnick, is a Caucasian male. *Id.*

After the Public Safety Committee made its recommendations, Mayor Kenney's transition team worked with an executive search company to find additional candidates. *Id.* Two additional candidates were found through this search, and additional interviews were then conducted by a second committee.[2] *Id.* at 3–4. Finally, this second committee recommended that Darcella Sessomes, an African American female who was identified through the executive search company, and Resnick, the Caucasian male who was identified as a promising candidate by the Public Safety Committee, be interviewed by Mayor Kenney and the Managing Director for a final decision. *Id.* at 4.

---

[1] This independent committee included former Prisons Commissioner Lou Giorla, JoAnn Epps, David Rudovsky, Kenneth Trujillo, Bryan Lentz, Joseph Evers, Pedro Ramos, and Rodney Muhommad. Def.'s Mot. for Protective Order 3.
[2] This second interview committee included Brian Abernathy, Michael DiBerardinis, and Julie Wertheimer. Def.'s Mot. for Protective Order 3–4.

For a time, Resnick and Sessomes were leading contenders for the position. However, defendant states that Resnick was rejected based on "issues" between Resnick and the Mayor in prior work contexts and Sessomes was rejected after "Mr. Resnick expressed concerns . . . about bringing a candidate from outside the Philadelphia Prison System into the position." *Id.* at 4. Eventually, Resnick, who was Acting Commissioner during the latter part of the search process, suggested to Abernathy, the City's First Deputy Managing Director, that the second interview committee look at Blanche Carney, an African American female who was presently a Deputy Commissioner working in the Philadelphia Prison System. *Id.*

Ultimately, based on the recommendation of the second interview committee, Mayor Kenney chose not to select either Resnick or Sessomes and instead appointed Carney. *Id.* Plaintiff alleges that Mayor Kenney's administration was specifically looking to fill the Commissioner position an African American female. Pl. First Am. Compl. 6. In support of this theory, plaintiff cites Resnick's deposition testimony. Resnick states that he told Abernathy, "[i]f you want to hire a black female, we have one and her name is Blanche Carney." Pl.'s Mem. in Opp. 4 (citing Resnick Dep. 85:24 – 86:23). According to Resnick's deposition testimony, Abernathy did not deny that they were searching for an African American female to fill the role of Commissioner, and instead responded by saying that hiring Carney was a great idea. *Id.* Plaintiff also notes that according to an article in Philadelphia Magazine, Mayor Kenney was dissatisfied that his high-level appointments were not as racially and ethnically diverse as the citizens of Philadelphia. Pl.'s Mem. in Opp. 2, Ex. C. On this issue, defendant contends that Carney was selected based on her qualifications, her social work background, and the fact that she had experience working within the Philadelphia Prison System. Def.'s Mot. for Protective

Order 4. After selecting Carney for the role, Mayor Kenney stated that he was "excited that a woman was selected for the position." *Id.* at 2.

On or about July 5, 2016, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining that he was denied a promotion based on his race and sex. Pl.'s First Am. Compl. 7. Plaintiff filed the present action on October 19, 2017. The First Amended Complaint was filed on March 13, 2018. Plaintiff's First Amended Complaint alleges that defendant discriminated against plaintiff based on his race and sex in failing to promote him to the position of Commissioner of Prisons, and that the plaintiff was subjected to a hostile work environment and retaliation based on his EEOC complaint. Specifically, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

The parties are currently engaged in the discovery process. At the time this motion was filed, plaintiff had served three sets of interrogatories, two sets of requests for admissions, two sets of requests for the production of documents, and had taken numerous depositions.[3] *Id.* On September 14, 2018, plaintiff issued a revised Notice of Videotaped Deposition, scheduling Mayor Kenney for deposition on October 9, 2018. *Id.* at 5.

Defendant filed the pending motion on October 4, 2018, requesting that the Court preclude the videotaped deposition of Mayor Kenney because he was not personally involved in rejecting plaintiff as a candidate for the position of Commissioner of Prisons. Plaintiff

---

[3] There is some disagreement between the parties as to whether plaintiff requested more than ten depositions, exceeding the deposition limit in Federal Rule of Civil Procedure 30(a)(2). *Compare.* Def.'s Mot. for Protective Order 5 *with* Pl. Mem. in Opp. 2.

responded on October 15, 2018 and defendant filed a reply on October 25, 2018.  The motion is now ripe for the Court's consideration.

## III.  DISCUSSION

Courts may "for good cause" issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  A party seeking a protective order has the burden of demonstrating that "good cause" exists for the order of protection.  *Furey v. Wolfe*, No. 10-1820, 2011 WL 597038, at *5 (E.D. Pa. Feb. 18, 2011).  To determine whether there is good cause to issue the order, courts consider a variety of factors including, but not limited to, whether disclosure will violate any privacy interests, whether the information is being sought for a legitimate or improper purpose, and whether disclosure of information will cause party embarrassment.  *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).  Good cause has also been recognized in cases in which a party seeks to depose a "high ranking government official." *See Buono v. City of Newark*, 249 F.R.D. 469, 472 (D.N.J. 2008); *Hankins v. City of Philadelphia*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).

"High ranking government officials are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge."  *Id*.  The logic behind the limited immunity, first articulated in *United States v. Morgan*, 313 U.S. 409 (1941), is "that high ranking government officials have greater duties and time constraints than other witnesses" and that, "without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation."  *Bogan v. City of Boston,* 489 F.3d 417, 423–24 (1st Cir. 2007); *Johnson v. Attorney Gen. of State of New Jersey*, No. 12-4850, 2015 WL 4915611, at *2 (D.N.J. Aug. 18, 2015).  To protect these interests, the party requesting the

deposition of a high ranking government official must show that the proposed deposition is: (1) likely to lead to the discovery of admissible evidence; (2) is essential to that party's case; and (3) that this evidence is not available through any alternative source or less burdensome means. *Hankins,* 1996 WL 524334, at *1; *Robinson v. City of Philadelphia*, No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006).

In this case, plaintiff seeks to depose Mayor Kenney. As an initial matter, although the Third Circuit has yet to articulate a clear process for classifying individuals as "high ranking," district courts have routinely found that a mayor is sufficiently high ranking to trigger the limited immunity from a deposition about matters on which they lack unique personal knowledge. *Buono*, 249 F.R.D. at 472, fn. 2; *Johnson v. Attorney Gen. of State of New Jersey*, No. 12-4850, 2015 WL 4915611, at *3 (D.N.J. Aug. 18, 2015). As a result, in order to depose Mayor Kenney, plaintiff must show that his request meets the three above listed requirements. The Court will address each requirement in turn.

### A. <u>Likely to Lead to the Discovery of Admissible Evidence</u>

"The first requirement – that 'testimony is likely to lead to the discovery of admissible evidence' – requires something greater than the normal Rule 26 relevancy standard." *Robinson*, 2006 WL 1147250, at *2. "Mere knowledge or awareness of information that may be helpful if discovered is insufficient." *Furey*, 2011 WL 597038, at *5. In order to depose a mayor, the party seeking the deposition must make an actual showing that the mayor "possesses personal knowledge relevant to the litigation." *Robinson*, 2006 WL 1147250, at *2.

For example, in *Hankins v. City of Philadelphia,* the court concluded that a mayor's administrative approval of changes to job classifications did not demonstrate personal knowledge sufficient to overcome a mayor's limited immunity from depositions. *Hankins*, 1996 WL

524334, at *2. In that case, although the Mayor signed off on the proposed changes as part of the City's Administrative Board, his approval was deemed insufficient to demonstrate that the Mayor had personal knowledge of the particular reasons why such changes were proposed or why staffing decisions of the various agencies were made. *Id.*

Following the logic in *Hankins*, defendant argues that the deposition of Mayor Kenney should be precluded because Kenney was not personally involved in rejecting plaintiff as a candidate for the position of the Commissioner of Prisons. Indeed, Mayor Kenney was never presented with plaintiff's name as a candidate at all. Defendant states that "discovery documents and testimony [have] confirmed that the decision not to select plaintiff for the position of Commissioner of the Philadelphia Prisons was made by an independent Public Safety Committee." Def. Mot. for Protective Order 1. Plaintiff, however, argues that even if Mayor Kenney had no personal knowledge regarding why the Public Safety Committee chose not to recommend the plaintiff, as the final decisionmaker, Mayor Kenney would have knowledge of the hiring process and policy, and his ultimate decision to appoint Commissioner Carney. Pl.'s Mem. in Opp. 7.

The present case is distinct from *Hankins* because Mayor Kenney's involvement in the search process for a new Commissioner of Prisons was more than mere *pro forma* administrative approval. As the final decisionmaker, information about any guidelines or expectations Mayor Kenney provided to his staff and the Public Safety Committee for selecting a commissioner could lead to the discovery of admissible evidence. However, the Court cannot say that a videotaped deposition would likely lead to discovery of admissible evidence that has not already been produced.

7

## B. Essential to Plaintiff's Case

In addition to showing that the proposed deposition would likely lead to admissible evidence, the party requesting the deposition of a high ranking government official must show that the proposed deposition is essential to that party's case. *Hankins*, 1996 WL 524334, at *1.

Plaintiff argues that Kenney's deposition is essential because Mayor Kenney made the final decision regarding the Commissioner of Prisons appointment and, as Abernathy, the City's First Deputy Managing Director said in his deposition, "what [Mayor Kenney] wants in the role is all that matters." Pl.'s Mem. in Opp. 8.

Although Mayor Kenney's testimony would have been critical if he had directly rejected plaintiff's application, in this case, the adverse action of failing to promote the plaintiff was determined by an independent Public Safety Committee. Thus, the critical inquiry is what guidelines or expectations the Mayor and his administration communicated to the Public Safety Committee.[4]

Plaintiff already has a significant amount of discovery documents and deposition testimony regarding the policies of the Mayor's administration. For example, plaintiff has copies of documents provided to the Public Safety Committee prior to their interviews, including "Guiding Principles of the Kenney Administration" and "Guiding Criteria – Selection of Kenney Leadership Team." Pl.'s Mem. in Opp. 3. Plaintiff has also already taken the depositions of

---

[4] Plaintiff argues that, under a mixed motive analysis, even if his application was rejected by the Public Safety Committee for non-discriminatory reasons, if Commissioner Carney's promotion was motivated in any way by her race or gender, that would be sufficient for limited recovery, such as injunctive relief, under a mixed motive analysis. Pl.'s Mem. in Opp. 7-8. Based on this theory, plaintiff argues that it is essential to his case that he depose Mayor Kenney. This argument is rejected.
    In this case, the relevant employment decision was the decision not to promote the plaintiff, not the decision to promote Commissioner Carney. If plaintiff had made it to the final round of the hiring process such that his denial was inextricably linked to the selection of Commissioner Carney, the inquiry would be different. But in this case, where plaintiff's application was rejected by an entirely different set of decisionmakers, evidence of Mayor Kenney's motivation in appointing Commissioner Carney is not essential to plaintiff's claim and does not override the limited immunity from depositions afforded to high ranking government officials.

number of individuals who served on the Public Safety Committee along with individuals who were a part of the second interview committee and the Mayor's transition team. This discovery provides plaintiff with any policies, information, or priorities that were conveyed by the Mayor to the Public Safety Committee prior to their decision not to recommend plaintiff. Therefore, most, if not all, admissible evidence that could be acquired through deposing Mayor Kenney would be duplicative and is not "essential" to plaintiff's case. Therefore, plaintiff fails to meet the second required element.

### C. **Available Through Alternative Sources and Less Burdensome Means**

Finally, a plaintiff seeking to depose a high ranking government official must show that the evidence sought is not available through any alternative source or less burdensome means. *Hankins,* 1996 WL 524334, at *1.

As discussed above, plaintiff is able to probe the City's alleged policy of using race and gender in promotion decisions and the City's failure to promote him to the position of Commissioner through alternative sources. Specifically, Brian Abernathy, the City's First Managing Director, and Jane Slusser, the Mayor's Chief of Staff at the time the Commissioner of Prisons position was being filled, among others, discussed these issues at length in their depositions.

Furthermore, plaintiff can, and has, used interrogatories or requests for admission to ask specific questions of the Mayor's administration. For example, plaintiff has already submitted requests for admission that specifically address Mayor Kenney's state of mind in making his final decision to appoint Commissioner Carney. One such request for admission stated:

> the fact that Mayor Kenney was 'very excited that' a 'woman' was hired into the Commissioner of Prisons role influenced his decision-making process when deciding who to hire as the Commissioner of Prisons.

9

Def.'s Mot. for Protective Order Ex. H. The Mayor's office responded by stating:

> the decision to hire Blanche Carney as the Commissioner of Prisons was based solely on her being the candidate with the best overall qualifications for the job and any reflection of excitement that the job went to a woman does not raise any inference that her appointment was made on the basis of gender or race or that such factors influenced the decision to hire her.

*Id.*

The Court thus concludes that plaintiff has failed to show that the requested videotaped deposition of Mayor Kenney is necessary. Although deposing Mayor Kenney might produce some admissible evidence, such evidence would be largely duplicative. Any such evidence is not essential to plaintiff's case. Moreover, plaintiff has alternative sources and less burdensome means to acquire the information. As a result, the defendant has sufficiently carried its burden to demonstrate good cause to preclude the videotaped deposition.

Requests for admission and written interrogatories, such as those already served by the plaintiff, are useful tools for targeted discovery when a deposition is precluded for good cause and they have provided considerable relevant evidence in this case. In addition, the Court will permit a limited deposition of Mayor Kenney by written questions, pursuant to Federal Rule of Civil Procedure 31, if plaintiff concludes that a limited number of specific questions remain unanswered on the current record.[5]

### IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for a Protective Order is granted. Plaintiff may not take the videotaped deposition of Mayor Kenney. This order is without prejudice to the plaintiff's right to conduct a limited deposition of Mayor Kenney by written

---

[5] *See Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C 1964) (allowing plaintiff to proceed by submitting written questions to the administrator of NASA where the administrator had no person knowledge relevant to the case).

questions, pursuant to Fed. R. Civ. P. 31, if plaintiff concludes that a limited number of specific questions remain unanswered on the current record.

       An appropriate order follows.